MARY C. HUDSON, administratrix, *vs.* PEOPLE'S STREET
RAILWAY COMPANY.

Essex.    November 8, 1899. — December 5, 1899.

Present: HOLMES, C. J., KNOWLTON, MORTON, HAMMOND, & LORING, JJ.

*Death — Conscious Suffering — Absence of Due Care by Motorman in operating*
*Street Railway Car.*

If, in an action against a street railway company for causing the death and for the
conscious suffering of the plaintiff's intestate, who was a motorman, the most
natural inference from the facts and the evidence is that he was running his
car in the daytime at a high rate of speed until the other car, which he had rea-
son to expect the coming of on the same track, was close upon him, and there
is nothing tending to show that, immediately before he tried to stop his car, he
was exercising any care in reference to the known risk of a collision, he was
not in the exercise of due care, and a verdict was rightly directed for the
defendant.

TORT, for causing the death, and for the conscious suffering
of the plaintiff's intestate, who was a motorman in the employ
of the defendant.    The declaration was under the employers'
liability act, St. 1887, c. 270, and at common law.    Trial in
the Superior Court before *Bell,* J., who ruled that the plaintiff's
intestate was not in the exercise of due care, and directed a ver-
dict for the defendant; and the plaintiff alleged exceptions.    If
the ruling was right, judgment was to be entered for the de-
fendant; if wrong, the verdict was to be set aside and a new
trial granted.    The facts appear in the opinion.

*W. H. Moody,* (*N. N. Jones* with him,) for the plaintiff.

*J. P. Sweeney,* for the defendant.

KNOWLTON, J.    It is unnecessary to consider whether there
was evidence of negligence on the part of any one exercising
superintendence for the defendant, as we are of opinion that the
presiding justice rightly ruled that there was no evidence of due
care on the part of the plaintiff's intestate, while he had reason
to expect the coming of another car on the same track.    He was
a motorman of experience, and was entirely familiar with the
road, the manner in which the railway was equipped, and the
method of its operation.    If we interpret the evidence most
favorably to him, he was directed to run a car back towards

Newburyport to meet the other car of the line somewhere beyond the regular place of meeting. He knew that the car which he was to meet was late and would be likely to be running rapidly. He had no reason to suppose that the conductor or motorman of this car would be expecting to meet his car elsewhere than at the regular meeting place near the middle of the line; he knew that there was no telephonic communication from Haverhill, whence his orders came, to points along the line or to the terminus at Newburyport, although there was a telephonic line to the office of another street railway company in Newburyport about six hundred or a thousand feet from the terminus of the defendant's railway. He had no reason to suppose that any orders had been given to the conductor or motorman of the other car to run their car differently from usual, or to stop before reaching the usual place. He knew that the set-back car had been sent back to meet his car without any reason on his part to expect its coming, and the natural inference would be that his car was to go back to meet the other car of the regular line while the motorman of that car supposed that his car was running over the whole line as usual. The view most favorable to the plaintiff's intestate is that he thought it possible that the superintendent had telephoned to the office of the other company in Newburyport, and had caused an order to be given to the conductor or motorman of the other car to stop at number three turnout, which is next easterly of the regular turnout at the middle of the line. He certainly had no assurance or information of this, and it would seem that he had little, if any, reason to think that such an order had been given. Indeed, there was uncontradicted evidence that on two previous occasions he had gone forward, apparently without orders, beyond the middle turnout on the road to Haverhill, and had met the other car not far from the place where this accident happened. Under these circumstances it was the duty of the plaintiff's intestate after he passed the middle turnout, as it had previously been the duty of the motorman of the set-back car, to run his car very carefully, and, except in places where the road was visible for a long distance before him, very slowly. It was in the daytime, and doubtless in many places he could see along the road far enough to enable him to run the car safely at its usual speed; but in

those places where his view was obstructed he should have proceeded cautiously, watching constantly to see if the other car was approaching. The failure to do this would be negligence which would prevent a recovery in this action.

The burden of proof was on the plaintiff to show that her intestate was using due care, and she introduced no evidence to sustain this burden. All that appears in the bill of exceptions which refers to his conduct after passing the usual meeting place is contained in the sentence, " A head-on collision of considerable force ensued, although the motormen of both cars endeavored to check their speed." How near together the cars were before the motormen tried to check their speed does not appear. There is nothing to show that the plaintiff's intestate was not running his car rapidly, or that he was taking any precautions in reference to the probability or possibility of meeting the other car. It does appear that he was going down a steep hill, and that a light snow had begun to fall, making the rails slippery. These facts increased the importance of using special care. The most natural inference from the facts and evidence stated in the bill of exceptions is that he was running his car at a high rate of speed until the other car was close upon him. There is not a word in the bill of exceptions which tends to show that, immediately before he tried to stop his car, he was exercising any care in reference to the known risk of a collision.

*Exceptions overruled.*